## UNITED STATES *v.* NIXON, BIDDLE, AND WEST, RECEIVERS OF THE ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MISSOURI.

No. 427. Argued October 22, 1914.—Decided November 30, 1914.

A receiver of a corporation is not a corporation and not within the terms of the penal statute regulating corporations involved in this action. *United States* v. *Harris,* 177 U. S. 305.

In so far as a receiver of a railroad company transports passengers and property he is a common carrier with rights and responsibilities as such, and while operating a railroad he is subject to the penal provisions of a statute regulating the actions of common carriers in regard to transportation.

Prior to the amendment of March 4, 1913, extending the Quarantine Act of March 3, 1905, c. 1496, 33 Stat. 1264, prohibiting the transportation of cattle from a quarantined State to any other State, so as to make it apply to any common carrier, §§ 2 and 4 of that act did not apply to receivers of railroad companies.

Entries in the caption and on the back of the indictment are convenient means of reference, and in cases of doubt might be of assistance in determining what statute has been violated, *Williams* v. *United States,* 168 U. S. 382, but they form no part of the indictment itself.

The statute on which the indictment is founded must be determined as matter of law from the facts therein charged; and the facts as pleaded may bring the offense charged within an existing statute although the same is not mentioned in the indictment and another statute is referred to in the entries on the back and in the caption.

Under the Criminal Appeals Act of 1913, the statute on which as matter of law the indictment is based may be misconstrued not only by misinterpretation but by failing to apply its provisions to an indictment which sets out facts constituting a violation of its terms.

An indictment must set out the facts and not the law.

The right of the Government to an appeal under the Criminal Appeals Act of 1907 cannot be defeated by entering a general order of dismissal without referring to the statute involved or giving the reasons on which the decision was based.

An error on the part of the trial judge dismissing the indictment in construing the statute in its original form as not including the offense charged, cannot be cured, nor can his decision be sustained, because the amendment by which the statute was made to include the offense had not been called to his attention.

THE facts, which involve the jurisdiction of this court under the Criminal Appeals Act of 1907 and the construction of the Cattle Quarantine Act of 1905 and its application to receivers of common carriers under the Amendment of 1913, are stated in the opinion.

*Mr. Assistant Attorney General Underwood* for the United States.

*Mr. W. F. Evans* and *Mr. W. S. Cowherd* for defendants in error, submitted.

MR. JUSTICE LAMAR delivered the opinion of the court.

The Grand Jury for the Western Division of the Western District of Missouri returned an indictment against the St. Louis & San Francisco Railroad Company and its Receivers, charging that on August 16, 1913, Nixon, Biddle and West, as Receivers of said 'Company, were operating the property and business of said corporation as a common carrier of freight, and unlawfully transported cattle from a quarantine district in Oklahoma to Kansas City, Missouri, without compliance with the rules and regulations established by the Secretary of Agriculture.

Both the indorsement and caption to this indictment described it as being for "violation of secs. 2 and 4 of the act of March 3, 1905, 33 Stat. 1264." Those sections of that act provide that "no railroad company . . . shall transport from any quarantine State . . . to any other State any cattle . . ." except "in com-

pliance with regulations promulgated by the Secretary of Agriculture.''

The defendants demurred on the ground ''that the indictment does not charge any offense for which Receivers herein can be held.'' The court treated the indictment as founded on the act of 1905 imposing a penalty upon railroad companies and after argument sustained the demurrer—filing a memorandum in which he held that, under the ruling in *United States* v. *Harris,* 177 U. S. 305, the statute did not create an offense for which Receivers could be punished.

The case is here under the Criminal Appeals Act (34 Stat., 1246) on a writ of error in which the Government excepts generally to the quashing of the indictment and specially to the court's construction of this act of 1905.

In view of the decision in *United States* v. *Harris,* the judgment of the court below would necessarily have to be affirmed if the case was to be determined solely by the provisions of the Quarantine Act of 1905, which imposes a penalty for the transportation of cattle by a railroad company. But a Receiver is not a corporation, and, therefore, not within the terms of a statute applicable to railroad companies, even though cattle from an infected district transported by him would be as likely to transmit disease as if they had been shipped over the same line while it was being operated by the company itself. And, no doubt in recognition of this fact, and in order to make the remedy as broad as the evil sought to be cured, Congress, by the act of March 4, 1913, c. 145, 37 Stat. 828, 831, made all of the provisions of the original quarantine act of 1905 ''*apply to any railroad company or other common carrier, whose road or line forms any part of a route over which cattle or other live stock are transported in the course of shipment*'' *from a quarantine State to any other State.*

The statute, as thus amended, applied to transportation of live stock over short lines belonging to private individ-

uals or to lumber companies hauling freight for hire; to roads operated by Trustees under power contained in a mortgage; and also to the more common case where a railroad was being operated by a Receiver acting under judicial appointment. For in so far as he transports passengers and property he is a common carrier with rights and civil responsibility as such (*Eddy* v. *Lafayette*, 163 U. S. 456, 464; Hutchison on Carriers, § 77). And there is no reason suggested why a Receiver, operating a railroad, should not also be subject to the penal provisions of a statute prohibiting any common carrier from transporting live stock by rail from a quarantine district into another State. *Erb* v. *Morasch*, 177 U. S. 584; *United States* v. *Ramsey*, 197 Fed. Rep. 144.

But it is said that the Amendment, buried in the Agricultural Appropriation Act of 1913, was unknown to the Grand Jury when the indictment was found and was not construed in deciding the motion to quash. And it is contended that, inasmuch as the Criminal Appeals Act only authorizes a review of a decision in so far as it was "based upon the . . . construction of the statute upon which the indictment is founded" (March 2, 1907, c. 2564, 34 Stat. 1246),—the correct ruling that Receivers are not within the act of 1905 ought not to be reversed because it now appears that they are within the terms of the act of 1913 which was not brought to the attention of the District Judge and was not therefore construed by him in fact. It is pointed out that while there is a general assignment that the court erred in quashing the indictment, yet the Government itself specifically complains of the court's construction of the act of 1905—not the act of 1913. And to emphasize the fact that the indictment was not founded on the Amendment, attention is called to the fact that entries on the back and in the caption of the indictment describe it as being for "violation of Secs. 2 and 4 of the Act of March 3, 1905, 33 Stat.

1264," which apply to railroad companies and not to Receivers.

These entries are useful and convenient means of reference and in case of doubt might possibly be of some assistance in determining what statute was alleged to have been violated. But these entries form no part of the indictment (*Williams* v. *United States*, 168 U. S. 382, 389) and neither add to nor take from the legal effect of the charge that the Receivers, while operating the business of the corporation as a common carrier, transported cattle "contrary to the form of the statute in such cases made and provided." What was that statute and on what statute the indictment was founded was to be determined as a matter of law from the facts therein charged.

There is no claim that it was quashed because of any defect in matter of pleading, and that being true, the ruling on the demurrer that "the indictment does not charge any offense for which the Receivers can be held," necessarily involved a decision of the question as to whether there was any statute which punished the acts therein set out. In determining that question it was necessary that the indictment should be referred, not merely to the Act mentioned in argument, but to any statute which prohibited the transportation of cattle by the persons, in the manner, and on the date charged in that indictment. For the reasons already pointed out it was a misconstruction of the Act of 1913, to which the indictment was thus legally referred, to hold that Receivers acting as common carriers were not within its terms.

Nor can a reversal be avoided by the claim that the act of 1913, though applicable to the facts charged in the indictment, had not been construed by the court. For within the meaning of the Criminal Appeals Act (34 Stat. 1246) the statute on which, as matter of law, an indictment is founded, may be misconstrued not only by misinter-

preting its language, but by overlooking its existence and failing to apply its provisions to an indictment which sets out facts constituting a violation of its terms. It is "a solecism to say that the decision that the acts charged are not within the statute is not based upon a construction of it." *United States* v. *Patten,* 226 U. S. 525, 535. It would, of course, be fairer to the trial judge to call his attention to the existence of the act on which the indictment was based (*United States* v. *George,* 228 U. S. 14, 18). Yet an indictment must set out facts and not the law; and when he sustained the demurrer on the ground that the shipment therein stated did not constitute a crime of which the Receivers could be convicted, he in legal effect held that they were not liable to prosecution if while operating a road as common carrier they hauled live stock from a quarantine State to another. In rendering that decision he made a ruling of the very kind which the United States was entitled to have reviewed under the provisions of the Criminal Appeals Act (34 Stat. 1246). If that were not so the right of the Government could in any case be defeated by entering a general order of dismissal, without referring to the statute which was involved or without giving the reasons on which the decision was based.

The error can no more be cured by the fact that the existence of the statute was not called to the attention of the court than the Receivers, on the trial before the jury, could excuse themselves by proof that they did not know of the passage of the amendment which made it unlawful for them to transport cattle by rail from a quarantine State in interstate commerce.

*Judgment reversed.*

Mr. Justice McReynolds took no part in the consideration and decision of this case.